IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TODD JOSEPH SHATZER,　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　vs.　　　　　　　　　　　　　　　　) 　Civil Action No.  3:16-95
　　　　　　　　　　　　　　　　　　　　)
NANCY A. BERRYHILL, Acting　　　　)
Commissioner of Social Security,[1]　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendant.　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)

AMBROSE, Senior District Judge

## OPINION
### and
## ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. [ECF Nos. 12 and 14]. Both parties have filed Briefs in Support of their Motions. [ECF Nos. 13 and 15]. After careful consideration of the submissions of the parties, and based on my Opinion set forth below, Defendant's Motion [ECF No. 14] is granted, and Plaintiff's Motion [ECF No. 12] is denied.

### I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").  On or about February 18, 2013, Plaintiff applied for DIB. [ECF No. 6-7, at 194].  In his application, he alleged that since August 24, 2010, he had been disabled due to chronic back pain and depression. Id. at 194, 197.  His date last insured is

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

1

December 31, 2015.  Id. at 194.  The state agency denied his claims initially, and he requested an administrative hearing.  [ECF No. 6-4, at 69-72].  Administrative Law Judge ("ALJ") Donald M. Graffius held a hearing on December 5, 2014, at which Plaintiff was represented by counsel.  [ECF No. 6-2, at 29-58].  Plaintiff appeared at the hearing and testified on his own behalf.  Id.  A vocational expert also was present at the hearing and testified.  Id. at 51-57.  In a decision dated February 5, 2015, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act.  [ECF No. 6-2, at 12-24].  Plaintiff requested review of the ALJ's determination by the Appeals Council, and, on March 3, 2016, the Appeals Council denied Plaintiff's request for review.  [ECF No. 6-2, at 1-3].  Having exhausted all of his administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment.  [ECF Nos. 12 and 14].  The issues are now ripe for my review.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998).  Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir.

1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

B.   **WHETHER THE ALJ's RFC FINDING FAILED TO ACCOUNT FOR ALL OF PLAINTIFF'S DOCUMENTED MENTAL LIMITATIONS**

The ALJ found that Plaintiff had severe impairments, including scoliosis of the right hip; mild degenerative disc disease at the T11-12 level; bilateral piriformis syndrome; mood disorder, secondary to medical condition; depressive disorder due to another medical condition; unspecified depressive disorder; major depressive disorder, single episode, moderate; unspecified anxiety disorder; post-traumatic stress disorder; bipolar disorder with psychotic features; marijuana abuse; and alcohol dependence in remission.  [ECF No. 6-2, at 14].  He then found that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 14-15.  The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he was limited to occasional postural maneuvers such as balancing, stooping, kneeling, crouching, and climbing ramps and stairs; was limited to simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple work-related decisions, and in general, relatively few work place changes; and was limited to working primarily with objects rather than people and to no jobs requiring teamwork or interaction with the public.  Id. at 17-22.  The ALJ ultimately concluded that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled within the meaning of the Act.  Id. at 23-24.

In his opinion, the ALJ gave great weight to the opinion of Plaintiff's treating psychiatrist, Waleed Mushref, M.D.  [ECF No. 6-2, at 20, 22 (citing Ex. 10F)].  On November 6, 2014, Dr. Mushref opined, inter alia, that Plaintiff would occasionally have difficulty interacting with supervisors and coworkers, managing even a low stress environment, and maintaining

concentration, pace, and task persistence during an eight-hour work day. [ECF No. 6-19, at 879 (Ex. 10F)]. Although Plaintiff does not challenge Dr. Mushref's characterization of his limitations, he argues that the ALJ erroneously failed to include those limitations in his RFC finding, particularly the limitations on maintaining concentration, task persistence, and pace. [ECF No. 13, at 6-9]. This argument is without merit.

The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 404.1527(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Id. § 404.1527(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. Id. Unless a treating physician's opinion is given controlling weight, the ALJ must consider all relevant factors that tend to support or contradict any medical opinions of record, including the patient/physician relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the provider at issue. Id. § 404.1527(c)(1)-(6). "[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." Id. § 404.1527(c)(4).

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Id. Similarly, under 20 C.F.R. § [404.1527]([c])(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

Becker v. Comm'r of Social Sec. Admin., 403 F. App'x 679, 686 (3d Cir. 2010). The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. 20 C.F.R. § 404.1527(d)(1), (3). Likewise, the final responsibility for determining a claimant's RFC is reserved to the Commissioner, who will not give any special significance to the source of another opinion on this issue. Id. § 404.1527(d)(2), (d)(3).

Here, the ALJ gave "great weight" to Dr. Mushref's opinion, stating that the opinion was supported by the evidence and that it showed moderate limitations in social functioning, concentration, persistence, and pace.[2] [ECF No. 6-2, at 22]. Consistent with Dr. Mushref's opinion, the ALJ incorporated numerous mental limitations into Plaintiff's RFC, including: a limitation to simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple work-related decisions, and, in general, relatively few workplace changes; and a limitation to working primarily with objects rather than people and to no jobs requiring teamwork or interaction with the public. Id. at 17. Although Plaintiff acknowledges these restrictions, he nevertheless argues that the ALJ's RFC finding and hypothetical question to the VE inadequately address his moderate limitations of concentration, persistence, and pace. [ECF No. 13, at 6-9]. In particular, Plaintiff cites Ramirez v. Barnhart,

---

[2] Plaintiff does not challenge the ALJ's characterization of his limitations in the areas of social functioning, concentration, persistence, and pace as "moderate."

372 F.3d 546 (3d Cir. 2004) and related cases, for the proposition that a limitation to simple, routine tasks does not adequately account for a claimant's moderate deficiencies in pace. [ECF No. 13, at 8]. Plaintiff's reliance on Ramirez is misplaced.

As an initial matter, several courts within this Circuit have distinguished Ramirez and held that a limitation to simple, routine tasks adequately conveys "moderate" limitations in concentration, persistence and pace. See Padilla v. Astrue, Civ. A. No. 10-cv-4968, 2011 WL 6303248, at *10 (D.N.J. Dec. 15, 2011) (citing cases). Furthermore, and in any event, the ALJ in this case did not merely limit Plaintiff to simple, routine tasks. Rather, as set forth above, his hypothetical question to the VE and his RFC finding limited Plaintiff to "simple, routine, repetitive tasks, *not performed in a fast-paced production environment*, involving only simple work-related decisions, and, in general, relatively few workplace changes." [ECF No. 6-2, at 17, 52 (emphasis added)]. These additional limitations go beyond simple, routine tasks and more than adequately address Plaintiff's moderate limitations on concentration, persistence, *and pace*. See, e.g., Haines v. Astrue, Civil Action No. 11-309, 2012 WL 1069987, at *1 n.1 (W.D. Pa. Mar. 29, 2012).

To the extent Plaintiff further contends that the RFC finding fails to account for his social limitations or time off-task, such argument is likewise without merit. As an initial matter, the RFC finding and hypothetical questions to the ALJ adequately account for Plaintiff's moderate social limitations, by restricting Plaintiff, inter alia, to working primarily with objects rather than people and to no jobs requiring teamwork or interaction with the public. [ECF No. 6-2, at 17, 52-53]. Thus, Plaintiff's suggestion that the ALJ ignored his social deficits in the RFC finding is groundless.

With respect to time off-task, Plaintiff cites the VE's testimony that a person who missed work one day per month on a regular basis or who was off task more than 15% of the day would be competitively unemployable. [ECF No. 13, at 5]. This testimony, however, is immaterial to

7

Plaintiff's claims because the evidence does not support a finding that Plaintiff's mental impairments resulted in such limitations. The only medical evidence Plaintiff cites in support of his alleged inability to work on a regular and continuous full-time basis is a mental status evaluation form completed by treating psychologist, Jason Cook, on November 4, 2014. [ECF No. 13, at 4 (citing Ex. 9F)]. This form is identical to the one that Dr. Mushref completed on the same date, except that Dr. Cook opined that Plaintiff would often (as opposed to occasionally) have difficulty maintaining concentration, pace, and task persistence during an 8 hour work day, and that Plaintiff experiences approximately 30 bad days per month during which his symptoms are increased and he would not be able to complete an 8 hour work shift. [ECF No. 6-19 (Ex. 9F)]. Again, the ALJ did not ignore this evidence. Rather, he acknowledged Dr. Cook's opinion, but found that the evidence did not support a finding that Plaintiff was unable to complete an 8 hour workday or would often have difficulty with concentration, persistence, and pace. [ECF No. 6-2, at 22]. In support of his decision not to accord weight to this portion of Dr. Cook's opinion, the ALJ properly cited to underlying medical records and treatment notes showing that Plaintiff consistently had intact cognitive functioning, attention, and concentration, as well as to the contrary opinion of treating psychiatrist Dr. Mushref. Id. (citing Exs. 3F, 5F, 8F, and 10F). As set forth above, when physician opinions conflict, the ALJ may choose whom to credit and may reject a treating physician's assessment when, as here, such rejection is based on contradictory medical evidence.

Because the ALJ appropriately weighed the mental health evidence and accounted for Plaintiff's moderate mental limitations in formulating his RFC, substantial evidence supports this portion of his RFC finding, and remand on this point is unwarranted.

C.  **WHETHER THE ALJ ERRED IN FAILING TO INCLUDE ANY LIMITATIONS ON PLAINTIFF'S ABILITY TO REACH**

Plaintiff argues the ALJ's RFC finding is deficient because it failed to incorporate any limitations on reaching. [ECF No. 13, at 9-11]. Specifically, Plaintiff contends that the record shows that the VAMC prescribed Plaintiff a TENS unit, as well as grab bars for the shower/tub, orthotics for his shoes, a "reacher" to aid in reaching objects on the floor or above his shoulders, a long handled shoe horn, elastic shoe laces, a long handled sponge, and a sock aid. Id. at 10. Plaintiff states that his need for these assistive devices "plainly evidence[s] a limitation on reaching," and, therefore, that the ALJ erred in failing to include a reaching limitation in his RFC. Id. at 9-11. Plaintiff asserts that this alleged omission is material because, according to the Dictionary of Occupational Titles ("DOT") and related supplement, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("DOT Selected Characteristics"), all of the positions identified by the VE as jobs Plaintiff could perform (garment sorter, fruit cutter, and fabric folder) require frequent handling[3] and reaching. Id. at 10-11. After careful consideration, I disagree.

The DOT Selected Characteristics defines "reaching" as used in that publication as "[e]xtending hand(s) and arm(s) in any direction." DOT Selected Characteristics, at C-3. Even if the three jobs identified by the VE require frequent reaching, however, there is no medical or other objective evidence to support Plaintiff's assertion that he had any such reaching limitations. In particular, the treatment notes pertaining to the various assistive devices listed above do not indicate that Plaintiff had any issues using his upper extremities or any general inability to reach with his arms and hands. To the contrary, the medical records plainly show that the devices

---

[3] Although Plaintiff references "reaching" and "handling" in his argument heading, the body of his argument discusses only "reaching." Thus, I focus primarily on reaching here. My conclusions in this regard, however, would apply equally to Plaintiff's ability to handle objects. The DOT Selected Characteristics defines "handling" as "[s]eizing, holding, grasping, turning, or otherwise working with hand or hands." DOT Selected Characteristics at C-3.

were intended to alleviate Plaintiff's complaints of chronic low back pain and related pain in his leg(s) and feet. See, e.g., ECF Nos. 6-12, 6-18, 6-19 (Exs. 5F, 8F) at 440, 803-04 (describing TENS unit as alleviating factor for lower left back pain); 808, 820 (noting use of orthotics for foot pain); 756-57 (providing grab bars to help Plaintiff get in/out of soaking tub); 817 (instructing Plaintiff on use of grab bars, long handled sponge, hand-held shower, reacher,[4] sock aid, long handled shoe horn, and elastic shoe laces to address his difficulty dressing his lower body and reaching his lower body to complete bathing "secondary to low back pain"). The RFC's limitation to light work involving only occasional postural maneuvers, including inter alia, occasional stooping and crouching,[5] more than adequately accounts for Plaintiff's alleged difficulties reaching his lower body due to back pain. Because none of the assistive devices to which Plaintiff points or the associated medical records reflect an inability to extend his hands or arms or any other upper extremity limitations not already encompassed by the RFC, the ALJ did not err by failing to include additional reaching limitations in his RFC finding.

Plaintiff's suggestion that the ALJ erroneously failed to consider his ability to reach is without merit. As an initial matter, the ALJ obviously is not required to address evidence that does not exist. As set forth above, the medical evidence to which Plaintiff cites does not reflect any reaching limitations. Nevertheless, and in any event, the ALJ thoroughly discussed all of the pertinent medical evidence of record, including the records to which Plaintiff cites regarding assistive devices. See ECF 6-2, at 17-22 (making RFC finding "[a]fter careful consideration of

---

[4] Plaintiff misleadingly states in his brief that the VAMC prescribed a "reacher" to aid him "in reaching objects on the floor *or above his shoulders*." ECF No. 13, at 10 (emphasis added). The pertinent medical records, however, say no such thing. Rather, as set forth above, the reacher was one of seven items provided to address Plaintiff's alleged difficulty reaching his *lower* body to complete bathing and *lower* body dressing secondary to low back pain. ECF No. 6-19, at 817. The records do not mention any difficulties reaching above his shoulders. Id.

[5] The DOT Selected Characteristics defines "stooping" as "[b]ending body downward and forward by bending spine at the waist, requiring full use of the lower extremities and back muscles," and "crouching" as "[b]ending body downward and forward by bending legs and spine." DOT Selected Characteristics, at C-3.

10

the entire record," including, inter alia, the medical records contained in Exhibits 5F and 8F).  As Defendant correctly notes, the regulations do not require the ALJ to discuss every detail of the record evidence cited in his opinion.  See Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 203-04 (3d Cir. 2008).

Moreover, the ALJ's opinion expressly acknowledged Plaintiff's subjective assertion that "his pain was getting worse and that he experienced problems with squatting, bending, standing, *reaching*, walking, sitting, kneeling, and climbing stairs."  See ECF No. 6-2, at 19 (emphasis added) (citing Ex. 4E).  After careful consideration of the record, however, the ALJ concluded that "the objective medical findings and the claimant's significant activities of daily living do not support the degree of symptoms and limitations alleged."  Id.  In support of this conclusion, the ALJ cited, inter alia, pertinent treatment and progress notes, diagnostic studies, objective medical findings, and Plaintiff's self-described activities of daily living.  Id. at 17-22 (citing Exs. 4E, 1F, 2F, 3F, 4F, 5F, 8F, and Hearing Testimony).  Plaintiff's significant activities of daily living included going fishing as much as he can (including the day before the hearing where he caught a small fish); playing softball; taking care of his son when he is with him; driving daily to his mother's house a few blocks away; sometimes washing dishes and taking care of laundry; cooking and cleaning everything but the bathroom; sometimes going outside to throw a football with his son; trying to keep up with his woodworking, including making walking sticks by carving wood he obtains from the woods; regularly walking in the woods and going to the river; and taking care of his dogs.  Id. at 21 (citing Exs. 4E and 8F and Hearing Testimony); see also ECF No. 6-2, at 33-45.  All of these factors are proper considerations in determining a claimant's credibility and in formulating a claimant's RFC.

As the above demonstrates, the ALJ considered all of Plaintiff's alleged limitations resulting from his back impairment, including reaching, in making his RFC determination, and

substantial record evidence, including medical evidence and Plaintiff's significant activities of daily living, supports his findings in this regard. Because the RFC adequately accounts for Plaintiff's physical limitations supported by the record, Plaintiff's arguments in this regard are unpersuasive.

**D.  WHETHER THE ALJ ERRED IN FAILING TO ACCOUNT FOR TIME OFF TASK OR MISSED DAYS STEMMING FROM FLARES OF PLAINTIFF'S BACK PAIN**

Plaintiff's final argument is that the ALJ's RFC finding erroneously failed to account for off-task time or missed days resulting from flares of Plaintiff's sciatic pain. ECF No. 13, at 11-14. This argument is without merit.

Pursuant to 20 C.F.R. § 404.1529, the Commissioner must consider all "symptoms, including pain," in the disability determination. Statements of pain alone, however, are not enough to establish a disability; the claimant must also present objective medical evidence to show that the medical impairment "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); SSR 96-7p. Once the Commissioner has determined from the "medical signs or laboratory findings" that the claimant has an impairment which could reasonably produce the pain, then the Commissioner must evaluate the intensity, persistence, and limiting effects of the Plaintiff's symptoms to determine how the pain limits the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1); SSR 96-7p. In determining the limits on the claimant's capacity for work, the Commissioner will consider the entire case record, including evidence from the treating, examining and consulting physicians, observations from agency employees, and other factors such as the claimant's daily activities, descriptions of the pain, precipitating and aggravating factors, type, dosage, effectiveness, and side effects of medications, treatment other than medication, and other measures used to relieve the pain. 20 C.F.R. § 404.1529(c); SSR 96-7p. The Commissioner also will look at inconsistencies between

the claimant's statements and the evidence presented. 20 C.F.R. § 404.1529(c)(4). Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about his limitations or symptoms is less than fully credible. See Burns v. Barnhart, 312 F.3d 113, 129–30 (3d Cir. 2002). Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence he rejects and the reasons for discrediting such evidence. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000). Ordinarily, an ALJ's credibility determination is entitled to great deference. See Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir.2003).

Plaintiff's assertion that the ALJ here "over-relied" on the minimal findings on Plaintiff's radiological testing and not the "full picture" in failing to account for off-task time or missed days stemming from flares of Plaintiff's back pain is incorrect. In addition to the relatively mild or unremarkable diagnostic findings, which Plaintiff does not dispute, the ALJ thoroughly analyzed the "other evidence" of record, including, as Plaintiff acknowledges, pertinent treatment records and clinical findings. See ECF No. 6-2, at 16-22 (citing treatment notes at Exs. 1F, 2F, 3F, 4F, 5F & 8F). The ALJ also considered plaintiff's subjective complaints of pain, including his testimony that he had problems completing tasks and was unable to work because he has a lot of bad days, and properly concluded that those complaints were not fully credible and did not limit plaintiff's ability to perform light work as limited by the RFC. Id. In addition to the objective medical findings cited above, the ALJ pointed to the fact that Plaintiff's self-reported activities of daily living did not support the degree of symptoms and limitations alleged. Id. As previously discussed, Plaintiff reported significant activities of daily living, including: going fishing as much as he can; playing softball; taking care of his son when he is with him; driving daily to his mother's house a few blocks away; sometimes washing dishes and taking care of laundry; cooking and cleaning everything but the bathroom; trying to keep up with his woodworking, including making

13

walking sticks by carving wood he obtains from the woods; regularly walking in the woods and going to the river; and taking care of his dogs. Id. at 21 (citing Exs. 4E and 8F and Hearing Testimony); see also ECF No. 6-2, at 33-45. The ALJ also noted that the evidence did not show that Plaintiff's medication regimen or the side effects from his medications caused him significant functional limitations. Id. (citing Exs. 2E, 4E, 5F, 8F, and Hearing Testimony).

All of these factors are proper considerations in determining a claimant's credibility and in formulating a claimant's RFC. See 20 C.F.R. § 404.1529; SSR 96-7p. The ALJ directly addressed Plaintiff's allegations that his impairments caused severe pain and did not reject his allegations entirely. Rather, the ALJ incorporated numerous limitations related to Plaintiff's pain complaints in his RFC finding. See id. at 17 (RFC finding containing limitations on, inter alia, balancing, stooping, kneeling, crouching, and climbing ramps, stairs, ladders, ropes, and scaffolds). Although the VE testified that no unskilled jobs exist for someone who is unproductive for two days or more out of a 30-day period, the evidence did not support the need for such limitations in this case. It is well-established that an ALJ is only required to accept the responses to hypothetical questions that accurately reflect a claimant's impairments. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). As set forth herein, the record evidence does not support the additional limitations Plaintiff claims here. See, e.g., Hazlett v. Colvin, No. 2:13-cv-00538, 2014 WL 3845730, at *9 (W.D. Pa. Aug. 2, 2014); Brown v. Colvin, No. 15-3135, 2015 WL 7573205, at *11 (D.N.J. Nov. 24, 2015) (record did not support a finding that Plaintiff would necessarily be off task more than ten percent out of an eight-hour work day or absent two or more days per month due to symptoms of low back pain). Because the ALJ properly considered Plaintiff's limitations supported by the record, I find no error on this issue.

## III. <u>CONCLUSION</u>

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied.   An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TODD JOSEPH SHATZER,)
)
Plaintiff,)
)
vs.) Civil Action No. 3:16-95
)
NANCY A. BERRYHILL, Acting)
Commissioner of Social Security,[1])
)
Defendant.)
)
)

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 22nd day of March, 2017, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered the decision of the ALJ is affirmed and Plaintiff's Motion for Summary Judgment [ECF No. 12] is DENIED and Defendant's Motion for Summary Judgment [ECF No. 14] is GRANTED.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).